[No. A108213. First Dist., Div. Five. June 9, 2006.]

CHARISMA R., Plaintiff and Appellant, v.
KRISTINA S., Defendant and Respondent.

COUNSEL

National Center for Lesbian Rights, Shannon Minter, Courtney Joslin and Deborah Wald for Plaintiff and Appellant.

Liberty Counsel, Mathew D. Staver and Mary E. McAlister for Defendant and Respondent.

OPINION

**GEMELLO, J.**—Appellant Charisma R. appeals from denial of her petition to establish a parental relationship with a child born to her former partner, Kristina S.[1] We reverse and remand for the trial court to reconsider the petition in light of the California Supreme Court decision *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108 [33 Cal.Rptr.3d 46, 117 P.3d 660] (*Elisa B.*).

## FACTUAL AND PROCEDURAL BACKGROUND

Charisma R. and Kristina S. were a lesbian couple who began dating in July 1997, moved in together in August 1998, and registered as domestic partners with the State of California in January 2002. In 2002, Kristina became pregnant by artificial insemination from an anonymous donor, and Amalia was born in April 2003. Amalia was given a hyphenated last name, which was a combination of Charisma and Kristina's last names. In July 2003, Kristina moved out of the home she shared with Charisma, taking Amalia with her. Since then, Kristina has allowed Charisma to see Amalia on only two occasions.

In May 2004, Charisma filed a petition seeking to establish a parental relationship with Amalia. In an accompanying declaration, Charisma averred that she and Kristina decided to have a child together with the intention that they would both be the child's parents. The trial court denied the petition, holding that Charisma lacked standing to bring the action under the Uniform Parentage Act (Fam. Code, § 7600 et seq.).[2]

---

[1] In order to protect the confidentiality of the minor, we refer to the parties by their first names. (*Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, 160, fn. 1 [33 Cal.Rptr.3d 81, 117 P.3d 690].)

[2] All further statutory references are to the Family Code unless otherwise indicated.

## DISCUSSION

■ Under the Uniform Parentage Act, an "interested person" may bring an action to determine the existence or nonexistence of a mother and child relationship. (§ 7650.)

In concluding that Charisma lacks standing, the trial court followed three Court of Appeal decisions, each holding that a former lesbian partner lacking a biological tie to a child cannot establish a parent-child relationship under the Uniform Parentage Act. (*Curiale v. Reagan* (1990) 222 Cal.App.3d 1597, 1598–1600 [272 Cal.Rptr. 520]; *Nancy S. v. Michele G.* (1991) 228 Cal.App.3d 831, 835–836 [279 Cal.Rptr. 212]; *West v. Superior Court* (1997) 59 Cal.App.4th 302, 305–306 [69 Cal.Rptr.2d 160].) Subsequently, the California Supreme Court overruled those three decisions in *Elisa B., supra*, 37 Cal.4th 108, 119–120, 125–126. The court held that a former lesbian partner may be able to establish parentage under the Uniform Parentage Act as a presumed parent under a gender-neutral application of section 7611, subdivision (d). That subdivision provides that a man is presumed to be a father if (1) he receives the child into his home and (2) openly holds out the child as his natural child.[3]

### Elisa B. v. Superior Court

In *Elisa B.* the El Dorado County District Attorney filed a complaint to establish that Elisa B. was the parent of twins born to her former lesbian partner, Emily B., and to order Elisa B. to pay child support. (*Elisa B., supra*, 37 Cal.4th at p. 113.) Elisa B. denied that she was the children's parent. (*Ibid.*) It was undisputed that Elisa participated in the artificial insemination of her partner Emily with the understanding that they would raise the resulting child or children as coparents, and they did in fact coparent the children in a common family home for over a year and a half. (*Id.* at pp. 114–115, 122.) The court considered whether Elisa could be considered a presumed parent under section 7611, subdivision (d) and whether the case was "an appropriate action" to rebut the presumption of parenthood with evidence that there was no biological relationship between Elisa and the twins under section 7612, subdivision (a). (*Elisa B.*, at pp. 116–122.)

The court concluded that the Court of Appeal erred in relying in this context on language in *Johnson v. Calvert* (1993) 5 Cal.4th 84, 92 [19 Cal.Rptr.2d 494, 851 P.2d 776], to the effect that " 'for any child California

---

[3] The California Supreme Court's reading of section 7611, subdivision (d) in *Elisa B., supra*, 37 Cal.4th 108, was consonant with the Court of Appeal's opinion in *Kristine H. v. Lisa R., supra*, 37 Cal.4th 156, which the trial court declined to follow based on the state of the law at the time. The Supreme Court resolved *Kristine H.* on another ground.

law recognizes only one natural mother.' " (*Elisa B.*, *supra*, 37 Cal.4th at pp. 117–118.) The issue in *Johnson* was whether a wife whose ovum was fertilized in vitro by her husband's sperm and implanted in a surrogate mother was the mother of the child or whether the surrogate was the mother. (*Elisa B.*, at p. 117.) The court held that only the wife was the child's mother. (*Id.* at p. 118.) Whereas in *Johnson*, three people claimed to be a child's parents (the husband, the wife, and the surrogate), in *Elisa B.* the district attorney claimed that two people, both women, were a child's parents. (*Elisa B.*, at p. 118.)

The court examined whether Elisa could be considered a presumed parent under section 7611, subdivision (d), providing that a man is presumed to be a parent of a child if "[h]e receives the child into his home and openly holds out the child as his natural child." The court pointed out that section 7650, subdivision (a) states that provisions applicable to determining a father and child relationship shall be used to determine a mother and child relationship " 'insofar as practicable.' " (*Elisa B.*, *supra*, 37 Cal.4th at p. 119.) Accordingly, as the courts held in *In re Karen C.* (2002) 101 Cal.App.4th 932, 937–938 [124 Cal.Rptr.2d 677], and *In re Salvador M.* (2003) 111 Cal.App.4th 1353, 1357 [4 Cal.Rptr.3d 705], subdivision (d) of section 7611 applies equally in determining whether a man or a woman is a presumed parent. (*Elisa B.*, at pp. 120–122.)

As to the first part of the section 7611 test, it was undisputed that Elisa received the twins into her home. (*Elisa B.*, *supra*, 37 Cal.4th at p. 120.) As to the second part, the court held that the circumstance that Elisa does not have a biological tie to the twins did not necessarily mean that she did not hold out the twins as her natural children. (*Ibid.*) This conclusion followed from *In re Nicholas H.* (2002) 28 Cal.4th 56 [120 Cal.Rptr.2d 146, 46 P.3d 932], in which a man sought parental rights even though he admitted that he was not the child's biological father. (See *Elisa B.*, at p. 120.) In *Nicholas H.*, the man, Thomas, met Nicholas's mother when she was pregnant; he was named as Nicholas's father on the birth certificate; and he lived with the mother and Nicholas for several years. (*In re Nicholas H.*, at p. 61.) After their separation, the mother tried to prevent Thomas from having any contact with Nicholas. (*Id.* at p. 59.) Thomas sought parental rights when the county social services agency removed Nicholas from the mother's physical custody. The identity of the biological father had never been judicially determined and he had shown no interest in caring for Nicholas. (*Id.* at pp. 58, 61.) The Supreme Court held that Thomas was Nicholas's presumed father under section 7611, subdivision (d). (*In re Nicholas H.*, at p. 70.)

The primary issue in *Nicholas H.* was actually whether the case was an appropriate one in which to rebut the section 7611 presumption, and *Elisa B.* relied heavily on *Nicholas H.* as it turned to an analysis of that issue. Section 7612, subdivision (a) provides that "a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." *Nicholas H.* emphasized that section 7612 does not state that the presumption *is* rebutted by evidence that the presumed parent is not the child's biological father, but rather that it *may* be rebutted " '*in an appropriate action*' " by such evidence. (*In re Nicholas H., supra,* 28 Cal.4th at p. 63; see also *Elisa B., supra,* 37 Cal.4th at p. 120.) In *Nicholas H.,* the court concluded that the Legislature, in permitting the section 7611 presumption to be rebutted in an appropriate action "had in mind an action in which another candidate is vying for parental rights and seeks to rebut a section 7611(d) presumption in order to perfect his claim . . . ." (*Nicholas H.,* at p. 70.)[4] *Nicholas H.* held that the case was not an appropriate action to rebut the presumption because no one had raised a conflicting claim to being Nicholas's father. Permitting the presumption to be rebutted by Thomas's admission that he was not the biological father would leave Nicholas fatherless. (*Id.* at pp. 58–59, 70; see also *Elisa B.,* at p. 120.)

In *Elisa B.* the court held again that the action was not an appropriate one in which to rebut the parenthood presumption. (*Elisa B., supra,* 37 Cal.4th at pp. 122, 125.) The twins have no father because they were conceived by artificial insemination using an anonymous donor, and Elisa participated in and consented to that artificial insemination with the intention of coparenting any resulting children. (*Id.* at p. 122.) Rebutting the presumption of Elisa's parenthood would leave the children with only one parent. (*Ibid.*) That result would be contrary to the public policy favoring a child having two parents to provide emotional and financial support. (*Id.* at p. 123.) Although whether an action is an appropriate one in which to rebut the parenthood presumption is normally a matter within the discretion of the trial court, no remand was necessary because on the facts it would have been an abuse of discretion for the trial court to permit the presumption to be rebutted. (*Elisa B.,* at p. 122; see *In re Jesusa V.* (2004) 32 Cal.4th 588, 606 [10 Cal.Rptr.3d 205, 85 P.3d 2].) In other words, in *Elisa B.,* it would have been error to conclude that Elisa was not the twins' parent simply because she lacked a biological tie to them.

---

[4] The court noted that an appropriate action to rebut the presumption might be a case in which the rights and obligations of parenthood would "devolve upon an unwilling candidate." (*In re Nicholas H., supra,* 28 Cal.4th at p. 70.) *Elisa B.* declined to apply that dicta. (*Elisa B., supra,* 37 Cal.4th at p. 123.)

The court summarized: "We conclude, therefore, that Elisa is a presumed mother of the twins under section 7611, subdivision (d), because she received the children into her home and openly held them out as her natural children, and that this is not an appropriate action in which to rebut the presumption that Elisa is the twins' parent with proof that she is not the children's biological mother because she actively participated in causing the children to be conceived with the understanding that she would raise the children as her own together with the birth mother, she voluntarily accepted the rights and obligations of parenthood after the children were born, and there are no competing claims to her being the children's second parent." (*Elisa B.*, *supra*, 37 Cal.4th at p. 125.)

*Remand*

Following *Elisa B.*, we remand to the trial court to determine first, whether Charisma is a presumed parent of Amalia under section 7611, subdivision (d), and then, whether this is an appropriate action in which to rebut the presumption that Charisma is Amalia's parent. Presumed parent status depends upon affirmative findings that Charisma (1) received Amalia into her home and (2) openly held Amalia out as her natural child. If the trial court finds that Charisma is a presumed parent, then it should determine whether the facts outlined in *Elisa B.* on the rebuttal issue are true, namely (1) whether Charisma actively participated in causing Amalia to be conceived with the understanding that she would raise Amalia as her own together with Kristina, (2) whether Charisma voluntarily accepted the rights and obligations of parenthood after Amalia was born, and (3) that there are no competing claims to being Amalia's second parent. (*Elisa B.*, *supra*, 37 Cal.4th at p. 125.)

If the trial court finds that Charisma is a presumed parent and finds true all of the facts outlined in *Elisa B.* on the rebuttal issue, those findings support a conclusion that this is not an appropriate case to allow rebuttal of the presumption of Charisma's parenthood; in other words, the evidence that she has no biological tie to Amalia does not rebut the presumption. Absent other facts justifying rebuttal of the presumption (see, e.g., *In re T.R.* (2005) 132 Cal.App.4th 1202, 1212 [34 Cal.Rptr.3d 215]), any other conclusion would be an abuse of discretion. (*Elisa B.*, *supra*, 37 Cal.4th at pp. 120, 122.) If not all the facts outlined by *Elisa B.* are present, then the trial court should exercise its discretion with regard to the rebuttal issue based on the evidence and arguments. It may be that not all of the facts emphasized in *Elisa B.* are necessary to a finding that the presumption cannot be rebutted by the lack of a biological tie to the child. Or it may be that there are different facts that justify such a finding.

Kristina suggests that *Elisa B.* is distinguishable because in *Elisa B.* the biological mother supported the district attorney's action to declare Elisa a presumed parent in order to obtain child support. (*Elisa B., supra,* 37 Cal.4th at pp. 113–115.) Here, Kristina opposes presumed parent status for Charisma. However, nothing in *Elisa B.* suggests that the preferences of the biological mother control the determination of whether presumed parent status arises under section 7611, subdivision (d) and whether it is an appropriate case in which to rebut the presumption. Such a rule would be contrary to the "public policy favoring that a child has two parents rather than one." (*Kristine H. v. Lisa R., supra,* 37 Cal.4th at p. 166.) We need not reach the issue here, but we note that a rule that allowed the biological mother to unilaterally deny presumed parent status would potentially implicate the constitutional rights of the person seeking such status (see *In re Jerry P.* (2002) 95 Cal.App.4th 793, 797, 816–817 [116 Cal.Rptr.2d 123]) and the constitutional rights of the child in the establishment of the parent-child relationship (see *Kristine M. v. David P.* (2006) 135 Cal.App.4th 783, 791 [37 Cal.Rptr.3d 748]).

Appellant contends that remand is not necessary because the evidence in the record, like that in *Elisa B.*, compels findings that Charisma is a presumed parent and that this is not an appropriate action to rebut the presumption. Indeed, the trial court repeatedly stated that Charisma and Kristina intended to be coparents to Amalia. However, because the parties below did not have the benefit of the *Elisa B.* decision and were unable to frame their evidentiary presentations accordingly, it is not appropriate for this court to make factual findings. Fundamentally, it is the province of the trial court to decide questions of fact and the province of this court to decide questions of law. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541].) " 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule 23 of the California Rules of Court, the authority should be exercised sparingly. [Citation.] Absent exceptional circumstances, no such findings should be made.' " (*Zeth S.,* at p. 405, italics omitted.) This is particularly true where, as in the present case, an intervening Supreme Court decision has provided new guidance regarding the relevant factual findings.

Because we remand for further factual findings, we need not address Kristina's claim that it would violate her federal constitutional rights were we to conclude that Charisma is Amalia's parent under the Uniform Parentage Act.

## DISPOSITION

The judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion. Petitioner is awarded costs.

Jones, P. J., and Reardon, J.,[*] concurred.

On June 22, 2006, the opinion was modified to read as printed above.

---

[*]Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.